JUDGE PETERS
delivered the opinion op the court.
In August, 1868, this suit was instituted by appellants, and they allege that Absalom Ellis, being indebted to them in the sum of $1,514.58, due and payable on the 1st of June, 1868, executed to them a mortgage on the 19th of February, 1868, on seventeen and three fourth acres of land in Kenton County to secure said debt, and they make a copy of said mortgage a part of their petition.
*269 They further allege that after the execution of the mortgage Ellis filed his petition in bankruptcy, and that the defendant, Levis, was appointed his assignee, and as such claims some interest in the mortgaged property; but they say his interest is inferior to theirs, and they pray for a foreclosure and sale of the property, and an appropriation of the proceeds or a sufficiency thereof to pay their debt.
The appellees, Henry Worthington, E. and J. Power, and Jesse Wilcox, partners in trade, on their petition were made defendants, and allege that on the 29th of February, 1868, said Ellis filed his petition in bankruptcy in the District Court of the United States for the District of Kentucky, making appellants, appellees, and all his creditors parties thereto, and that they were all brought before the court; that with his petition said Ellis presented a schedule of and surrendered all his property to said court, including the land in controversy; that upon said petition and proceedings in said court, the said Ellis was declared and adjudged a bankrupt, and all his estate, including said tract of land, was transferred to J. S. Levis, the assignee in bankruptcy, to whom the title to said property, both legal and equitable, passed; that by the order of said court said land was sold by said assignee, and they became the purchasers thereof at said sale, and thereby became the legal owners of the same.
It is further alleged that at the date of the mortgage said Ellis was largely indebted to appellants and others, said indebtedness amounting to about twenty-seven thousand dollars, and his whole estate did not amount to over two thousand eight hundred dollars, and was then insolvent; that he executed said mortgage with the fraudulent intent to hinder appellees and other creditors in the collection of their debts and to prefer appellants; that they were apprised of his intentions, and participated in the fraud by accepting said motrgage. They also charge that Ellis was at the date'of the mortgage *270 indebted to them in the sum of fifteen thousand two hundred and forty-five dollars, for which they pray judgment, and made their answer a cross-petition.
The proceedings in bankruptcy are made part of and filed with the answer. They also filed the deed of Levis, the assignee in bankruptcy, to them for said land, the proceedings showing the sale by the assignee, the purchase by them, the confirmation by the court, and approval of the deed. Appellants filed a reply, in which they deny that Ellis executed the mortgage to them in contemplation of insolvency, or for the purpose of preferring them to other creditors. They say that when- he executed said mortgage to them he believed he was solvent, and that he was then able to pay all his individual debts; but he was then bound as surety for others whom he believed to be solvent, but who afterward became insolvent, and was thereby forced into bankruptcy.
They then deny that said district court ever adjudged their mortgage invalid, or that it was executed with the fraudulent design to prefer them to other creditors and in contemplation of insolvency; and allege that appellees by their purchase acquired said property subject to their mortgage, and deny that the same was made to secure a pre-existing debt.
On hearing the petition was dismissed, and plaintiffs below have appealed.
If the mortgage to appellants can not be sustained, or under the provision of the bankrupt act is void, although the question of its validity may not have been made and decided in the district court, still appellants can not maintain this action, and are not prejudiced by the judgment complained of.
The 35th section of the bankrupt law provides “that if any person, being insolvent or in contemplation of insolvency, within four months before filing the petition by or against him, with a view to give preference to any creditor, or person having a claim against him, or who is under any liability *271 for him, procures any part of his property to be attached, sequestered, or seized on execution, or makes any payment, pledge, assignment, transfer, or conveyance of any part of his property, either directly or indirectly, absolutely or conditionally, the person receiving such payment, pledge, assignment, transfer, or conveyance, or to be benefited thereby, or by such attachment, having reasonable cause to believe such person is insolvent, and that such attachment, payment, pledge, assignment, or conveyance is made in fraud of this act, the same shall be void, and the assignee may recover the property or the value of it from the person so receiving it or so to be benefited; and if any person, being insolvent, or in contemplation of insolvency or bankruptcy, within six months before filing of the petition by or against him, makes any payment, sale, assignment, transfer, conveyance, or other disposition of any part of his property to any person who then has reasonable cause to believe him to be insolvent, or to be acting in contemplation of insolvency and that such payment, sale, assignment, transfer, or other conveyance is made with a view to prevent his property from coming to his assignee in bankruptcy, or to prevent the same from being distributed under this act, or to defeat the object of, or in any way impair, hinder, impede, or delay the operation and effect of, or to evade any of the provisions of this act, the sale, transfer, assignment, or conveyance shall be void, and the assignee may recover the property, or the value thereof, as assets of the bankrupt. And if such sale, transfer, assignment, or conveyance is not made in the usual and ordinary course of business of the debtor, the fact shall be prima facie evidence of fraud. Any contract, conveyance, or security made or given by a bankrupt or other person, with or in trust for any creditor, for securing the payment of any money as a consideration for, or with intent to induce the creditor to forbear the opposing the application for discharge of the bankrupt, shall be void,” etc.
*272 The foregoing quotation contains all of the section that can have any application to this case.
It will be observed that the mortgage set up by appellants was made only ten days before the mortgagor filed his petition in bankruptcy, and months before the debt it professes to secure was due; nor does there appear to have been any pressure on the part of the mortgagees for their debt. Such pressure by law could neither have been threatened nor made from anything that appears, because the debt was not due.
The mortgagor’s assets were sufficient to pay but little over one dollar on a thousand dollars of his indebtedness. This condition of his affairs must have been known to him, and it is scarcely possible that appellants were ignorant thereof.
Such utter inability to pay his debts and hopeless insolvency left no reasonable expectation of avoiding bankruptcy, and the mortgage must have been made in contemplation of such a result; and still further, it was not made in the ordinary and usual business of the debtor, which fact is to be regarded as prima facie evidence of fraud, as provided in a paragraph of the section cited, and that is not repelled by any other evidence. All these facts and circumstances leave no room for escape that the mortgage was made in contemplation of bankruptcy, and that appellants were not ignorant of the motive of the mortgagor. Besides, they were notified of Ellis’s application for the benefit of the bankrupt law; they never appeared and set up claim to this land, but remained silent and inactive until after the sale of the land, the confirmation thereof, and a conveyance made to appellees by the order of the court, and they do not attempt to account for their negligence.
It is said by appellants that the law will not execute itself. That is an argument scarcely available to them. They are plaintiffs seeking, relief, and it devolves on them to show a right superior to appellees, which they have failed to do.
Judgment affirmed.